IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| CHARLES KNIGHT | § | |
| | § | CIVIL ACTION NO. 6:07cv70 |
| WARDEN FOXWORTH, ET AL. | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiff Charles Knight, proceeding *pro se*, filed this civil rights lawsuit complaining of alleged violations of his constitutional rights.   The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment pursuant to 28 U.S.C. §636(c).

An evidentiary hearing was conducted on August 2, 2007, pursuant to Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985).  At this hearing, Knight testified that he keeps getting moved from unit to unit, but that he has enemies who keep being moved along with him; every time he is moved to another unit, he said, his enemies get moved along with him.  Knight said that he did not know the names of his enemies, but knew them as "Little Monk" and "C.J."  He indicated that he had these problems because while at the Stiles Unit, he was accused of "snitching" on the Mexican Mafia.

Knight said that he was being held in solitary confinement, apparently in 11 Building, and that his enemies are there as well.  He says that his enemies have been moved along with him five times.  For relief, he asks that he be "removed from this dangerous situation."

Nurse Barbara Hughes, a correctional nurse under contract with TDCJ who was also present at the hearing, testified under oath concerning the contents of Knight's medical records.  She stated that Knight has been back and forth to Skyview, a psychiatric unit, many times, complaining of auditory hallucinations, and that he has a lengthy psychiatric history.  His major diagnoses include antisocial personality disorder, psychotic disorder, schizophrenia, impulse control disorder, and major depressive disorder.

Warden Baker, a TDCJ official also present at the hearing, testified under oath that if Knight had "snitched" on the Mexican Mafia, he could certainly run into problems, but that there was no evidence in the prison records that this had in fact occurred.

Knight stated that he had sued Major Calhoun because Calhoun was allowing the enemies to be housed behind him and to place monitors in his air vents. Knight explained that the Mexican Mafia was monitoring the Spears hearing and was listening to his thoughts. He did not know what kind of monitors were being used, but said that all he wants was protection from the Mexican Mafia.

This theme has also been presented by Knight in various other pleadings. He has stated that prison officials are allowing gang members to monitor him through a computer which monitors his every movement in his cell and when he goes out to recreation. This computer is operated through a battery and also winds up, Knight says. He also contends that the computer monitors his reading, his writing, and his "very thoughts," and that he learned about it when he heard voice sounds from his air vent, because the person doing the monitoring has a "print out screen" in his, the monitoring person's, cell.

In a pleading filed on May 18, 2007, Knight says that Skyview Unit officials have him under monitoring by "a type of computer monitoring machine," which hooks up to his plumbing through the toilet; this connects to another inmate's cell with a computer printout screen. This computer also has a voice box which is connected to Knight's cell through the air vent, and "is programmed especially for myself." He explains that this computer reads the mind of the person for whom it is programmed and "picks up" everything he does for transmission to his enemy's cell. It also builds up a substance in his body which remains for 24 hours.

The Prison Records

As Nurse Hughes said, Knight's medical records are extensive, and show a lengthy psychiatric history. On April 7, 2007, an entry by Correctional Managed Care - Mental Health Services indicates that Knight said that he was returned to the Skyview Unit after being caught with some weapons that he was going to use to kill his enemies, and then kill himself; he first said that

2

he was "hearing voices real bad" but then said that the voices were "on and off."  On March 21, 2007, an entry states that "while this patient may indeed have a serious mental illness, it appears that his cutting behaviors and his continued reports of self-harm may be for secondary gains, such as not having to be in a regular TDCJ facility; there are many notes that support this possibility."

On March 19, 2007, an entry says that Knight "is well known to the MHS [mental health services] and is known to sell his psychiatric medications," and that he can be "very manipulative" and uses us mental health symptoms in an attempt to control his environment.

On December 15, 2006, an entry states that "Patient is convinced that he is being followed around by a Hispanic inmate, which has been a fixed delusion for quite some time.  He was allowed to walk around the pod to see if he could recognize the 'offender' but was unable to do so."

On November 20, 2006, Knight stated that "I'm hearing voices and I'm real paranoid."  On September 14, 2006, Knight said that he felt paranoid and was hearing voices, and that thorazine has helped him before.  It was pointed out to him that he seemed to have some insights into the fact that he is paranoid, and the therapist offered the opinion that possibly his life was not in danger.  It was also pointed out that no one has been able to identify the person whom he says wants to harm him.  Knight responded that he would like to attend group sessions but not stay out in the dayroom because "he is not comfortable around a lot of people."

On August 28, 2006, an entry in the mental health records indicates that Knight has filed a life endangerment form saying that an unidentified Hispanic inmate wants to harm him; this is the second time that Knight had made such an allegation and it remains unsubstantiated.

On April 4, 2005, Knight reported that another offender who was giving him problems at his unit of assignment had followed him to the Jester IV Unit and "had been talking about him," but this could not be verified by security.

3

On April 1, 2005, Knight said that he was hearing voices which "call his name or tell him to hurt himself." On July 22, 2004, Knight said that he has been hearing voices coming from inside his head which tell him to harm himself. There are many other entries in the medical records along the same lines as those listed above.

Prison records also show that numerous life endangerment investigations have been undertaken in response to Knight's complaints, but that no evidence has ever been found to substantiate his allegations. According to one grievance response, Knight was seen by the Unit Classification Committee on November 14, December 5, December 15, and December 22 of 2006, and January 2, 2007, for his allegations of being in fear for his life by another inmate and seeking protection. Other records show that Knight's allegations have been investigated on numerous other occasions, including a life endangerment investigation on March 8, 2007, which found no evidence to support his claims, a review on March 10, 2006, in which no evidence was found to support his complaints, a review on February 11, 2005, which resulted in a referral to the unit psychiatric department, and a review on June 11, 2004, in which his life endangerment complaint was denied for lack of evidence.

Legal Standards and Analysis

In Neitzke v. Williams, 490 U.S. 319, 325 (1989), the Supreme Court held that "a complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or in fact." The Court went on to say that a claim is legally frivolous under Section 1915(d) when it is based on "an indisputably meritless legal theory." Neitzke, 490 U.S. at 327. The Fifth Circuit has noted that a finding of factual frivolousness is appropriate where the facts alleged rise to the level of the irrational or wholly incredible. Ancar v. Sara Plasma, Inc., 964 F.2d 465, 468 (5th Cir. 1992).

In this case, it is apparent that Knight's claims of monitoring by unseen enemies via computer, through the plumbing and air vent in his cell, are irrational and wholly incredible. *See* Williams v. Collins, slip op. no. 92-4921 (5th Cir., March 18, 1993) (unpublished) (affirming

4

dismissal, as factually frivolous, of complaint that prison officials were pumping toxic gas into an inmate's cell). *Accord,* Gordon v. Secretary of State of New Jersey, 460 F.Supp. 1026 (D.C.N.J. 1978) (prisoner denied the office of President of the United States because of his illegal incarceration in jail); Searight v. State of New Jersey, 412 F.Supp. 413 (D.C.N.J. 1976) (prisoner alleged that the defendants unlawfully injected him with a radium beam, so someone talks to him inside of his brain).

Knight also complains that prison officials are allowing a danger to exist, in the form of unknown "enemies" who wish to kill him. He indicates that prison officials are conspiring with these enemies, and have repeatedly moved them so as to follow him, but these enemies nonetheless have not managed to harm him.

Prison officials have a duty not to be deliberately indifferent to the safety of their inmates. Johnston v. Lucas, 786 F.2d 1254, 1260 (5th Cir. 1986); Jacquez v. Procunier, 801 F.2d 789, 792 (5th Cir. 1986). A showing of mere negligent indifference is not enough for a constitutional claim. Davidson v. Cannon, 474 U.S. 344 (1986).

The Supreme Court has specifically addressed the issue of deliberate indifference to an inmate's safety in prison. The Court explained that

> [A] prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. ...
>
> But an official's failure to alleviate a significant risk which he should have perceived, but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Farmer v. Brennan, 511 U.S. 825, 837-38, 114 S.Ct. 1970, 1979 (1994); *see* Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).

In this case, Knight has failed to show that prison officials have been deliberately indifferent to his safety because he makes no showing that these officials know of and have disregarded an excessive risk to his health or safety. Instead, the evidence shows that the alleged danger exists solely inside of Knight's mind. The prison records show that repeated life endangerment

investigations have been carried out in response to Knight's complaints, but none have been able to verify the existence of his enemies, much less that any threat to Knight's safety exists.  His assertion that the prison officials are deliberately indifferent to his safety by allowing him to be monitored with a computer operating through his toilet and air vents is frivolous on its face.  *See, e.g.*, Johnson v. D.E.A., 137 Fed.Appx. 680 (5th Cir., June 21, 2005) (not selected for publication in the Federal Reporter) (allegation that Drug Enforcement Administration planted transmitter in prisoner's scalp held "fantastic and delusional").  Knight's complaint is without merit.

Conclusion

28 U.S.C. §1915A requires that as soon as practicable, district courts must review complaints wherein prisoners seek redress from governmental entities or their employees.  Section 1915A(b) requires that upon review, the court shall identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

The term "frivolous" means that a complaint lacks an arguable basis in law or fact; a complaint is legally frivolous when it is based upon an indisputably meritless legal theory.  Neitzke v. Williams, 490 U.S. 319, 325-7 (1989).  A complaint fails to state a claim upon which relief may be granted if as a matter of law, it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.  Neitzke v. Williams, 490 at 327, *citing* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); *see also* Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995).  As noted above, a finding of factual frivolousness is appropriate where the facts are "clearly baseless," a category encompassing allegations which are "fanciful, fantastic, and delusional."  Hicks v. Garner, 69 F.3d 22, 25 (5th Cir. 1995).

In this case, Knight's allegations are fanciful, fantastic, and delusional, and may be dismissed as factually frivolous.  To the extent that he complains of a failure to protect him from harm, his claims also lack any arguable basis in law. Consequently, his lawsuit may be dismissed as legally

and factually frivolous under 28 U.S.C. §1915A(b).  *See generally* <u>Thompson v. Patteson</u>, 985 F.2d 202 (5th Cir. 1993).  It is accordingly

ORDERED that the above-styled civil action be and hereby is DISMISSED with prejudice as frivolous.  28 U.S.C. §1915A(b).  It is further

ORDERED that any and all motions which may be pending in this civil action are hereby DENIED.

So **ORDERED** and **SIGNED** this **22** day of  **August, 2007.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE